**RILEY RIPER HOLLIN & COLAGRECO**
By:  Christopher H. Schubert, Esquire (*Pro Hac Vice* to be filed)
       Attorney I.D. No. 47475
       chriss@rrhc.com
     Michael T. Shiring, Esquire (*Pro Hac Vice* to be filed)
       Attorney I.D. No. 78633
       mikes@rrhc.com
**717 Constitution Drive, Suite 201**
**Exton, Pennsylvania 19341**
**(610) 458-4400**

**Raymond P. Bolaños (CSB # 142069)** (*Pro Hac Vice* to be filed)
**rb2659@att.com**
**AT&T SERVICES, INC.**
**Legal Department**
**430 Bush Street, 6th Floor**                    **Attorneys for Plaintiff**
**San Francisco, CA 94108**                       **New Cingular Wireless PCS, LLC**
**(415) 268-9491**                                **d/b/a AT&T Mobility**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NEW CINGULAR WIRELESS PCS, LLC** | : **DOCKET NO.**  2:21-cv-443 |
| **d/b/a AT&T MOBILITY** | : |
|         **Plaintiff** | : |
|  | : |
|         vs. | : |
|  | : |
| **CITY OF PITTSBURGH,** | : |
| **COMMONWEALTH OF PENNSYLVANIA** | : **CIVIL ACTION** |
|         **Defendant** | : |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE**
**RELIEF AND REQUEST FOR EXPEDITED REVIEW**

Plaintiff, New Cingular Wireless PCS, LLC, d/b/a AT&T Mobility, by and through its

attorneys Riley Riper Hollin & Colagreco, P.C., hereby files this complaint for declaratory and

injunctive relief against the City of Pittsburgh, Commonwealth of Pennsylvania, and further

1

requests expedited disposition of this matter pursuant to the Telecommunications Act of 1996, 47 U.S.C. §332(c)(7)(B)(v), and in support thereof avers as follows:

## INTRODUCTION

1. AT&T has been attempting to place "small cell" wireless facilities (*i.e.*, small antennas and related equipment) on poles in the City's rights-of-way, to provide and improve wireless services in the City. Federal law limits the ability of municipalities to block installation of such facilities, based on nationwide goals of promoting the widespread availability of advanced, reliable wireless services. The City has violated this federal law, and AT&T seeks declaratory and injunctive relief as set forth herein.

## THE PARTIES

2. Plaintiff New Cingular Wireless PCS, LLC, d/b/a AT&T Mobility ("AT&T"), is a Delaware limited liability company registered in the Commonwealth of Pennsylvania as a foreign corporation. AT&T maintains principal corporate offices in the Commonwealth at 200 North Warner Road, King of Prussia, PA 19406.

3. Defendant City of Pittsburgh ("City") is a city of the second-class of the Commonwealth of Pennsylvania and is governed by the Home Rule Charter of the City of Pittsburgh, Pennsylvania, and various ordinances adopted pursuant to the authority thereof, as codified in the Pittsburgh Code, enacted on May 29, 1979, by Ordinance No. 15. The City maintains administrative offices at the City County Building, 414 Grant Street, Pittsburgh, PA 15219.

## JURISDICTION AND VENUE

4. This action arises under the laws of the United States, including the Communications Act of 1934, as amended by the Telecommunications Act of 1996, 47 U.S.C. §§

253 and 332. The United States District Court for the Western District of Pennsylvania has jurisdiction over this matter pursuant to: (a) 28 U.S.C. §§1331 (federal question) and 1337 (commerce) relating to a dispute arising under the laws of the United States and the Telecommunications Act of 1996, 47 U.S.C. §332(c)(7); and (b) 28 U.S.C. §§ 2201(a) and 2202 relating to the court's authority to issue declaratory relief where an actual controversy exists.

5. Venue is proper in the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. §1391(b)(2), in that a substantial part of the events or omissions giving rise to this action occurred in the Western District of Pennsylvania and the defendant is located within the Western District of Pennsylvania and has substantial and continuing contacts within this judicial district.

## LEGAL AND FACTUAL BACKGROUND

6. AT&T is a provider of "telecommunications services" as that term is defined by the Communications Act of 1934, as amended by the Telecommunications Act of 1996 (the "TCA"), 47 U.S.C. §151 *et seq*. To provide such services to consumers, enterprise customers and public safety agencies, AT&T builds, owns, and operates personal wireless service facilities.

7. One type of personal wireless facility that AT&T constructs for providing wireless services are "small cells," which typically consist of short, nonintrusive antennas and supporting equipment attached to utility poles and other structures in public rights-of-way, which assist in providing coverage for wireless services.

8. Under the TCA, municipalities must act upon applications to place wireless facilities within a "reasonable period of time" (47 U.S.C. § 332(c)(7)(B)(ii)); local regulations may not "prohibit or have the effect of prohibiting the ability" of a carrier to provide telecommunications services (47 U.S.C. § 253(a)); and local regulation of the placement of

wireless facilities "shall not prohibit or have the effect of prohibiting the provision of personal wireless services" (47 U.S.C. § 332(c)(7)(B)(i)(II)). The Federal Communications Commission ("FCC") has promulgated orders interpreting and implementing Sections 253 and 332 of the Act, which include specification of reasonable periods of time under Section 332 and identification of the type of local action, or inaction, that may unlawfully prohibit service.

9. Specifically, in its 2009 *Shot Clock Order*, the FCC defined specific "reasonable" timeframes within which state and local governments must act on a request for the placement, construction or modification of personal wireless service facilities under 47 U.S.C. §332(c)(7)(B)(ii). *See Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B) to Ensure Timely Siting Review and to Preempt Under Section 253 State and Local Ordinances that Classify All Wireless Siting Proposals as Requiring a Variance*, FCC Declaratory Ruling, 24 FCC Rcd. 13994 (Nov. 18, 2009).

10. Thereafter, in its 2018 *Small Cell Order*, the FCC clarified that in regard to small cell facilities, a "reasonable period of time" is 60 days to process applications requesting collocations on existing structures, and 90 days to process all other applications. *Small Cell Order*, ¶ 106, ¶ 111. Accordingly, if state or local governments do not act upon applications within those timeframes, then a "failure to act" has occurred and personal wireless service providers may seek redress in a court of competent jurisdiction within 30 days, as provided in Section 332(c)(7)(B)(v) of the TCA.

11. The City is a home rule charter municipality. As such, the City has all home rule powers and may perform any function and exercise any power not denied by the Constitution, the laws of Pennsylvania, or the Pittsburgh Home Rule Charter. This is true regardless of whether such

powers or functions are presently available to the City or may in the future become available. Pittsburgh Home Rule Charter (the "City Code"), Article I, Section 101.

12. Title Four, Article II, Chapter 427 of the City Code governs the installation of telecommunications systems in the public rights-of-way. Specifically, Section 427.01 provides that:

> "No person shall construct, operate or continue to operate a telecommunications system which occupies the streets, public ways and public places within the City without having been issued a ROW Use Agreement or licenses by the Director of the Department of Mobility and Infrastructure."

City Code, § 427.01.

13. Thus, pursuant to the City Code, a right-of-way use agreement is required to construct, operate or continue to operate a telecommunications system within the City's public rights-of-way. *Id*. However, nothing in the City Code requires an applicant to have an executed right-of-way use agreement in hand as a condition precedent for filing the initial application for a telecommunications system within the public rights-of-way.

14. On or about August 3, 2020, the City's Department of Mobility and Infrastructure ("DOMI") provided to AT&T a draft right-of-way use agreement ("ROW Agreement"). The ROW Agreement as initially presented would require AT&T to pay an annual fee of $870 for each small cell facility comprised of a pole with antennas. The City later advised AT&T that the City's actual adopted fee for such telecommunications installations would be $850 annually, and that the final ROW Agreement would be revised accordingly.

15. The FCC's presumptively reasonable annual fee is $270 for all recurring charges for each small cell located within the ROW, including any possible ROW access fee or fee for attachment to municipally-owned structures in the ROW. *Small Cell Order*, ¶ 79.

16. Thus, the City's recurring fee for such telecommunications installations exceeds the FCC's presumptively reasonable recurring fee by nearly 215%, in violation of federal law.

17. As set out in the *Small Cell Order*, "[A]ll providers have limited capital dollars to invest, funds that are quickly depleted when drained by excessive ROW fees. . . [C]ompetitive demands will force carriers to deploy small cells in the largest cities. But, when those largest cities charge excessive fees to access ROWs and municipal ROW structures, carriers' finite capital dollars are prematurely depleted, leaving less for investment in mid-level cities and smaller communities. Larger municipalities have little incentive to not overcharge, and mid-level cities and small municipalities have no ability to avoid this harm." *Small Cell Order*, ¶ 61.

18. The City refuses and continues to refuse to reduce its recurring fees to align them with federal law.

19. Given that the City's recurring fee for such telecommunications installations exceeds the FCC's presumptively reasonable recurring fee, AT&T has been unwilling to sign the City's ROW Agreement.

20. On December 8, 2020, AT&T finalized submission of two pole permit applications through the City's web-based filing portal known as "OneStopPGH" and paid the required filing fees to the City.

21. Both applications involved the swap-out of existing decorative light poles owned by the City with replacement poles of substantially similar design, the collocation of antennas at the top of each pole, and installation of radio equipment to be housed in equipment shrouds

attached to the side of the poles (the "Proposed Facilities"). *See* DOMI-PL-2020-06542, at fn. [1] and DOMI-PL-2020-06525, at fn. [2] (together, the "Applications").

22. The *Small Cell Order* shot clock for the Applications is 90 days. The shot clock on the Applications has not been tolled, and it expired on March 8, 2021, with the City taking no action on the Applications.

23. AT&T is informed and believes that the City's failure to act appropriately on the Applications is based on AT&T's refusal to sign the City's ROW Agreement which mandates payment to the City of the above-stated inappropriate and illegal fees.

24. As set forth below, the City's acts and inaction violate federal law.

**FIRST CLAIM FOR RELIEF**
**(Unreasonable Delay and Shot Clock Violation)**
**(47 U.S.C. § 332(c)(7)(B)(ii); 47 C.F.R. § 1.6003)**

25. AT&T hereby incorporates by reference the allegations of paragraphs 1 through 24, inclusive, as though fully set forth herein.

26. The TCA requires the City to act upon AT&T's Applications for the Proposed Facilities within a "reasonable period of time." 47 U.S.C. § 332(c)(7)(B)(ii).

27. The City failed to act within a reasonable period of time upon the Applications.

28. The City violated 47 U.S.C. § 332(c)(7)(B)(ii), as implemented by 47 C.F.R. § 1.6003 and the *Small Cell Order*, by failing to approve or deny the Applications submitted for final processing on or before expiration of the applicable shot-clock on March 8, 2021.

---

[1] https://onestoppgh.pittsburghpa.gov/pghprod/pub/lms/Default.aspx?PossePresentation=Public&PosseObjectId=38641154

[2] https://onestoppgh.pittsburghpa.gov/pghprod/pub/lms/Default.aspx?PossePresentation=Public&PosseObjectId=38641164

29. The City violated 47 U.S.C. § 332(c)(7)(B)(ii) by unreasonably delaying approval of reasonable and lawful license terms for the installation of small cell facilities on poles located in the City rights-of way.

30. AT&T will suffer imminent irreparable harm if the City continues to violate the law and delays processing AT&T's small cell applications and executing a ROW Agreement. Further, the entry of an injunction will serve the public interest by preserving the purpose of the Telecommunications Act to "encourage the rapid deployment of new telecommunications technologies." TCA, 110 Stat. 56.

WHEREFORE, AT&T prays for judgment as set forth below.

## SECOND CLAIM FOR RELIEF
### (Effective Prohibition)
### (47 U.S.C. § 332(c)(7)(B)(i)(II))

31. AT&T hereby incorporates by reference the allegations of paragraphs 1 through 30, inclusive, as though fully set forth herein.

32. Section 332 of the TCA mandates that local regulation of the placement of wireless facilities "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II).

33. The City has effectively prohibited AT&T's provision of personal wireless services, by failing to timely act upon AT&T's Applications, failing to approve the Applications, and failing to offer reasonable and lawful license terms in connection with the Applications.

34. Local inaction by the end of the applicable small cell shot clock amounts to a presumptive prohibition on the provision of personal wireless services within the meaning of the TCA. *See Small Cell Order*, ¶¶ 116-129. The FCC has explained that when a local government does not issue all necessary permits and authorizations in a timely manner, litigation will be

8

expedited, and wireless services providers will have a straightforward path to fast and complete injunctive relief. *Id.*

35. The City's shot clock violation constitutes an effective prohibition on AT&T's provision of personal wireless services, in violation of Section 332 of the TCA.

36. An effective prohibition, in violation of the TCA, also occurs when a local requirement "'materially limits' or inhibits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment" (*Small Cell Order*, ¶ 35), such as "where a [local regulation] materially inhibits a provider's ability to engage in . . . a variety of activities related to its provision of a covered service" (*id*. at ¶ 37). The material inhibition analysis "focuses on the service the provider wishes to provide, . . . including facilities deployment to provide existing services more robustly, or at a better level of quality." *Id.*, n. 95. A local government "could materially inhibit service in numerous ways – not only by rendering a service provider unable to provide existing service in a new geographic area or by restricting the entry of a new provider in providing service in a particular area, but also by materially inhibiting the introduction of new services or the improvement of existing services." *Id*., ¶ 37.

37. The City, by refusing to act on AT&T's small cell Applications and failing to offer licensing terms that fully comply with federal law, has materially inhibited AT&T's effort to improve its wireless network by building small cell wireless facilities in the City. The City has thus effectively prohibited AT&T from providing personal wireless services in the City.

38. The City has also effectively prohibited AT&T's provision of personal wireless services, in that its failure to approve AT&T's Applications has prevented AT&T from remedying a significant service capacity gap via the least intrusive means. AT&T's Proposed Facilities will help AT&T address a significant service capacity gap in the City by providing and improving

critical wireless services, by, *inter alia,* offloading network traffic carried by existing macro facilities in the area and enabling faster data rates.

39. By placing the Proposed Facilities (and future proposed facilities) in an area where AT&T's existing wireless telecommunications facilities are constrained, and where AT&T experiences especially high network traffic, AT&T can close its service gaps and address its customers' existing and forecasted demands for expanded wireless services. AT&T selected the Proposed Facilities locations as the best available and least intrusive means to address its service objectives.

40. AT&T will suffer imminent irreparable harm if the City continues to delay processing AT&T's Applications (and future applications), based on the City's insistence on mandating license terms and fees that violate federal law. Further, the entry of an injunction will serve the public interest by preserving the purpose of the TCA to "encourage the rapid deployment of new telecommunications technologies." TCA, 110 Stat. 56.

WHEREFORE, AT&T prays for judgment as set forth below.

### THIRD CLAIM FOR RELIEF
**(Effective Prohibition)**
**(47 U.S.C. § 253)**

41. AT&T hereby incorporates by reference the allegations of paragraphs 1 through 40, inclusive, as though fully set forth herein.

42. Under Section 253 of the TCA, local government regulation may not "prohibit or have the effect of prohibiting the ability" of a carrier to provide telecommunications services.

43. Section 253 of the TCA prohibits both express and *de facto* moratoria on permit applications to place telecommunications facilities. *In the Matter of Accelerating Wireline Broadband Deployment by Removing Barriers to Infrastructure Investment*, 33 FCC Rcd. 7705,

¶¶ 149, 167 (FCC rel. Aug. 3, 2018) (hereinafter, "*FCC Moratoria Ruling*"). Moratoria—whether express or *de facto*—violate the TCA and are unlawful because they prohibit or have the effect of prohibiting the provision of wireless telecommunications services. *Id.* ¶ 151. *De facto* moratoria are state or local actions "that effectively halt or suspend the acceptance, processing, or approval of applications or permits for telecommunications services or facilities." *Id.* ¶ 149. Examples include refusals to process applications, refusals to issue permits for a category of structures, such as a city-owned pole, and frequent and lengthy delays. *Id*.

44. The City's delay in failing to approve or reject the Applications, and its insistence on demanding acceptance of unlawful and unreasonable terms and fees for installation of facilities in the City rights-of-way, constitute a *de facto* moratorium in violation of Section 253 of the TCA.

45. AT&T will suffer imminent irreparable harm if the City continues to delay processing AT&T's Applications (and other future applications). Further, the entry of an injunction will serve the public interest by preserving the purpose of the TCA to "encourage the rapid deployment of new telecommunications technologies." TCA, 110 Stat. 56.

WHEREFORE, AT&T prays for judgment as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, AT&T prays for relief against the City as follows:

a) For a declaration and judgment that the City has violated the TCA by failing to act within a reasonable period of time on AT&T's Applications;

b) For a declaration and judgment that the City has violated the TCA by effectively prohibiting AT&T from improving and providing personal wireless services and telecommunications services;

c) For an order in mandamus or an injunction mandating that the City grant forthwith AT&T's Applications and immediately issue all permits and all other authorizations necessary for the construction of the Proposed Facilities;

d) For an order in mandamus or an injunction prohibiting the City from charging excessive, unreasonable, and illegal fees in violation of federal law;

e) For an award of AT&T's costs of suit herein; and

f) For such other and further relief as the Court may deem just and proper, including retaining jurisdiction over this matter to ensure compliance with any order that the Court may issue.

**REQUEST FOR EXPEDITED REVIEW**

Section 332 of the TCA provides AT&T a private right of action for the City's failure to act on AT&T's wireless facility permit applications, and states that "[t]he court shall hear and decide such action on an expedited basis." 47 U.S.C. § 332(c)(7)(B)(v). AT&T respectfully requests a hearing and decision by the Court on an expedited basis as provided by the TCA.

Respectfully submitted,

RILEY RIPER HOLLIN & COLAGRECO, P.C.

By: _____
Christopher H. Schubert, Esquire
Attorney I.D. No. 47475
chriss@rrhc.com
Michael T. Shiring, Esquire
Attorney I.D. No. 78633
mikes@rrhc.com
717 Constitution Drive, Suite 201
Exton, PA 19341
(610) 458-4400

By: _____
Raymond P. Bolaños
Attorney I.D. CSB #142069
rb2659@att.com
AT&T SERVICES, INC.
Legal Department
430 Bush Street, 6th Floor
San Francisco, CA 94108
(415) 268-9491

*Attorneys for Plaintiff New Cingular Wireless PCS, LLC, d/b/a AT&T Mobility*